

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

*overruled O-4029*
*where conflicts*

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-5833
Re: Taxability of subscription
warrants under Texas Stock
Transfer Tax (Article 7047,
Vernon's Annotated Civil
Statutes).

Your letter of January 27, 1944, submits for our opinion the following question:

"Is the Texas Stock Transfer Tax levied by Article XV of H. B. 8, (Art. 7047m, Vernon's Civil Statutes) applicable to the transfer of subscription warrants?"

Before discussing the authorities upon which we rely in forming this opinion we believe it may be helpful to state here our definition of "subscription warrants". We find "subscription warrants" to be warrants issued by a corporation to those entitled to subscribe to stock evidencing their "rights to subscribe for stock".

The Texas statute, Article 15, H. B. 8, Reg. Sess., 47th Legislature, under which your request is directed, was modeled after the New York Act. A comparison of the pertinent provisions of these two revenue measures seems requisite. Those portions follow:

"Art. 7047m. Stock transfer and sales tax--
Tax imposed; affixing stamps; memorandum of sale
"Section 1. There is hereby imposed and levied a tax as hereinafter provided on all sales, agreements to sell, or memoranda of sales, and all deliveries or transfers of shares, or certificates of stock, or

Hon. George H. Sheppard, Page 2

certificates for rights to stock, or certificates of deposit representing an interest in or representing certificates made taxable under this Section in any domestic or foreign association, company, or corporation, or certificates of interest in any business conducted by trustee or trustees made after the effective date hereof, whether made upon or shown by the books of the association, company, corporation, or trustee, or by any assignment in blank or by any delivery of any papers or agreement or memorandum or other evidence of sale or transfer or order for or agreement to buy, whether intermediate or final, and whether investing the holder with the beneficial interest in or legal title to such stock or other certificate taxable hereunder, or with the possession or use thereof for any purpose, or to secure the future payment of money or the future transfer of any such stock, or certificate, on each hundred dollars of face value or fraction thereof, three (3) cents, except in cases where the shares or certificates are issued without designated monetary value, in which case the tax shall be at the rate of three (3) cents for each and every share. . . ."

Chapter 60 Civil Laws New York. "Transfers subject to Tax" provides as follows:

"Sec. 270. Amount of tax - 1. There is hereby imposed and shall immediately accrue and be collected a tax, as herein provided, on all sales, or agreements to sell, or memoranda of sales and all deliveries or transfers of shares or certificates of stock, or certificates of rights to stock, or certificates of interest in property or accumulations, or certificates of deposit representing certificates taxable under this article, in any domestic or foreign association, company or corporation, or certificates of interest in business conducted by a trustee or trustees, made after the first day of June, nineteen hundred five, whether made upon or shown by the books of the association, company, corporation or trustee, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of sale or transfer, whether

Hon. George H. Sheppard, Page 3

intermediate or final, and whether investing
the holder with the beneficial interest in or
legal title to said stock, or other certificates
taxable hereunder, or merely with the possession
or use thereof for any purpose, or to secure the
future payment of money, or the future transfer
of any such stock, or certificates."

We observe that the language of the two Acts de-
scribing the transactions taxable seems phrased in exactly the
same words, though not arranged in the same continuity. We
fail to find express language in either of these statutes at-
tempting to levy a tax upon "Rights to subscribe to stock."

Since the United States Internal Revenue Act, Title
26, paragraph 1802b, U. S. C. A., had its inception prior to
the passage of the Texas statute, we must presume that the
Legislature had such Act before it at the time it adopted the
New York statute as the model for its efforts. The express
language of a part of the Federal Act is as follows:

"(b) Sales and transfers. On all sales, or
agreements to sell, or memoranda of sales or de-
liveries of, or transfers of legal title to any of
the shares or certificates mentioned or described
in subsection (e), or to rights to subscribe for
or receive such shares or certificates, whether
made upon or shown by the books of the corporation
or other organization, or by any assignment in
blank, or by any delivery, or by any paper or agree-
ment or memorandum or other evidence of transfer or
sale (whether entitling the holder in any manner to
the benefit of such share, certificate, interest or
rights, or not), on each $100 of par or face value
or fraction thereof of the certificates of such
corporation or other organization (or of the shares
where no certificates were issued) . . . ."

In construing a statute, the purpose is to ascertain
the legislative intent and from our observation of the express
provisions of the three revenue measures, we find that the phrase
"Rights to subscribe to stock" though included in the Federal
statute is omitted from the New York and Texas statutes and we
must keep this distinction clearly in mind in seeking to deter-
mine the intention of the Legislature.

Hon. George H. Sheppard, Page 4

The Texas law being of recent origin, has not been interpreted by our courts, and for that reason, we must turn to New York decisions and rules and regulations of its tax authorities for a construction of the question herein presented. These, of course, are not conclusive but are persuasive and should be given great weight.

Common practice and procedure of corporations doing business through the New York Stock Exchange under methods approved by the New York Tax Commission should be considered in determining transactions taxable and transactions not taxable under New York Jurisprudence. Observing the rules as interpreted by paragraphs 60-000, 60-300, inclusive, the Corporation Tax Service, C. C. H., N. Y. 1; paragraphs 4100-4134, inclusive, Corporation Service, Prentice-Hall, Vol. 1; and Christy & McLean, The Transfer of Stock, 2nd Ed., we observe that:

I.   Subscription warrant is a certificate evidencing the right to subscribe to stock and is issued by the corporation to the stockholder entitled to the privilege of subscribing to the stock to be issued. Paragraph 4105 and Paragraph 4205, Prentice-Hall Corp. Serv., Vol. 1.

II.   Presentation of warrant.
(a)   The warrant shall be presented to the corporation before the expiration date shown on the face of such warrant and upon such presentation the bearer may subscribe to stock. If full payment is made for the shares to be issued, subscriber is delivered a receipt evidencing his right to the stock, entitling him on a specified date to certain full shares or fractional shares of stock, subsequently being issued certificates of stock. Paragraph 4205, Prentice-Hall Corp. Serv., Vol. 1.

(b)   In event bearer elects to pay for such shares in installments he is issued a negotiable receipt, evidencing his right to the stock, entitling the holder on a specified date to certain full shares or fractional shares of stock, and upon final payment, at the time and in the manner specified, he is issued certificates of stock.

Hon. George H. Sheppard, Page 5

Upon the transfer by sale or otherwise of subscription warrants, defined in Paragraph I above, the Federal Tax applies and stamps are required to be affixed and cancelled. The New York tax does not apply to this transaction. Paragraph 60-108, C. C. H., N. Y. 1; Paragraph 4205 and page 4148, Prentice-Hall Corp. Serv., Vol. 1; Christy & McLean, Paragraph 353, page 534.

Subsequent to the act of subscribing to the stock, by a holder of a subscription warrant as described in Paragraph II (a) and (b) thereof, any transaction involving the transfer of the right held by the subscriber requires the affixing and cancellation of United States Revenue Stamps and New York Revenue Stamps. Sohmer v. Herden, infra; Paragraph 4205, Sec. 7, Prentice-Hall Corp. Serv., Vol. 1; and Paragraph 60-301, The Corporation Tax Service, C. C. H., N. Y. 1.

The State of New York Tax Department, Albany, New York, in a letter to the New York Stock Exchange, dated May 8, 1922, said:

"By 'Certificate of Rights to Stock' is meant only such certificates which entitle the holder on a specified date to certain full shares or fractional shares of stock. 'Rights to subscribe' to stock do not come within this meaning and are not taxable under the statute." (Underscoring ours)

Pursuant to a written request by the writer the State of New York Department of Taxation and Finance answered by letter dated March 1, 1944, advising us further with reference to subscription warrants that such are not taxable under New York Law. The pertinent part of such letter reads as follows:

"The federal stock transfer tax law definitely provides for a tax on transfers of legal title to 'rights to subscribe for' stock. The New York law has no similar provision. It does tax transfers of 'certificates of rights to stock' but the Tax Commission has held that a certificate giving the right to purchase stock is not a certificate of rights to stock.

"I cannot refer you to any opinion of our Attorney General or to any decision of our courts on the question. By way of reasoning it may be

Hon. George H. Sheppard, Page 6

pointed out that a right to subscribe for stock or a right to purchase stock is likely to be of small value. The consideration which must be paid for the subscription or the purchase will in many cases, at least, represent as much as the stock is worth. It seems highly inequitable, therefore, to impose the same tax on a transfer of a stock purchase warrant (a certificate of a right to receive stock after paying for it) as on a transfer of a certificate giving a right to receive stock without paying anything or possibly some small amount for expenses as in the case, for example, of a corporate reorganization in which the holder of a bond is entitled to receive stock upon paying certain expenses. It is believed that New York never intended to tax transfers of rights to subscribe for stock and that the language of the statute so indicates."

After considering all of the above, we must readily conclude that the transfer of subscription warrants, though taxed under the Federal Act, is not taxable under the New York Act. However, it follows that subsequent to the action of the bearer of such warrant in subscribing for the stock that any transaction relating to the sale or other transfer of any of the rights or intermediate certificates evidencing such rights is taxable both under the Federal and New York laws.

From the instant of subscribing to the stock until the actual issuance of certificates of stock, the transfer of the rights evidenced by intermediate certificates is taxable in New York, whether full payment is made at the time of subscribing or whether a portion of the payment is deferred. The leading case in New York touching this point is Sohmer vs. Herden, et al, 216 N. Y. 728, 111 N. E. 1100, reversing 165 Appellate Division 853, 151 N. Y. Supp., 346. The per curiam opinion of the Court of Appeals adopted as its opinion the dissenting opinion of the lower court, the text of which is recited in full in our opinion to you, No. O-4026.

In the Sohmer case, supra, the railway company increased its capital stock and permitted its stockholders the privilege of purchasing his portion of the stock at $175 per share, the payments being deferred. The court said, in part, as follows:

". . . There were some limitations on the holders of these new shares. They were not to have all of the privileges of stockholders until the final payments, but in the meantime they were given intermediate certificates, which entitled them to receive 7 per cent interest upon the portion paid in, together with the right of making the final payments and receiving the final certificates. These intermediate certificates were stock certificates; they were transferable, and gave to the holder the rights of a stockholder upon the performance of the conditions. The fact that they did not immediately invest the holder with all of the privileges of the old certificates is of no importance; each of these certificates was a 'paper or agreement or memorandum or other evidence of sale or transfer' intermediate to the final certificates, and it was designed to secure the 'future transfer of any stock,' which might have been secured to the holder thereof. . . ."

The decision in the Sohmer case, supra, does not discuss the question herein raised, but we recite it as showing a distinction between rights to stock evidenced by intermediate certificates issued after subscription, therein discussed, and rights to subscribe to stock, evidenced by subscription warrants issued before subscription.

Since there have been no court decisions or rules or regulations prescribed by our taxing authorities relating to this subject, we have turned to the rules and regulations of the New York Tax Authorities and interpretations of the courts in that jurisprudence to determine the construction placed upon the provisions of the New York Act that were followed as a model for the Texas statute. After a study of the available authorities, the customs and common usage approved by the New York Tax Department, we find that the transfer of subscription warrants is not taxable in New York. It has long been the custom in Texas to give the same construction to an Act that it received in the State where such Act has been construed. Koy v. Schneider, 221 S. W. 880; 12 Corpus Juris 717, citing cases from 22 states.

We therefore advise you that the transfer of "subscription warrants" is not taxable under Article 7047m, Vernon's

Annotated Civil Statutes. We again define "subscription warrants" to be warrants issued by a corporation to those entitled to subscribe to stock evidencing their "rights to subscribe for stock."

Opinion No. 0-4029, delivered to you on November 7, 1941, insofar as it is in conflict herewith, is hereby overruled. In such opinion reference was frequently made by us to regulations and interpretations of the United States Treasury Department regarding transactions taxable under the Federal Act. Since the Federal Act contained express language levying a tax on rights to subscribe to stock, and since no such express language is contained in either the Texas or New York statutes, we believe Opinion No. 0-4029, insofar as it construed the Act to impose a tax on the transfer of subscription warrants, to have been in error. In overruling Opinion No. 0-4029, we rest upon the presumption that the Legislature had before it, at the time of the adoption of the Texas statute, the express language contained in the United States Revenue measure and in the New York statute and that it was aware of the interpretation given in the New York jurisdiction, from which our statute was taken, and that in adopting such statute, it intended also to accept such construction.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Harris Toler_
Harris Toler
Assistant

APPROVED NOVEMBER 7, 1944

ATTORNEY GENERAL OF TEXAS

HT:fo


APPROVED
OPINION
COMMITTEE
BY _____